UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAY BRADSHAW,                                        :

                    Plaintiff,                       :

                                                     :        17 Civ. 1199 (AJP)
          -against-
                                                     :        **OPINION & ORDER**

THE CITY OF NEW YORK, et al.,                        :

                    Defendants.                      :

                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

>          Plaintiff Jay Bradshaw, pro se, brought this action under 42 U.S.C. § 1983 against

defendants after being assaulted in prison. (Dkt. No. 2: Compl.) Presently before the Court is

defendants' partial summary judgment motion. (Dkt. No. 47.) The parties have consented to

decision of the case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 35.) For the

reasons set forth below, defendants' motion is <u>GRANTED</u> (except <u>DENIED</u> as to the state law claim

of assault and battery against Officer Alphonse).

**FACTS**

>          The following relevant facts are undisputed for purposes of this motion. (<u>See</u>

<u>generally</u> Dkt. Nos. 49 & 56: Def. & Bradshaw Rule 56.1 Stmts.; <u>see also</u> Def. Rule 56.1 Stmt. n.1.)

**<u>The November 20, 2015 Incident</u>**

>          On November 20, 2015, Bradshaw was incarcerated at the Manhattan Detention

Center ("MDC"). (Dkt. No. 2: Compl. ¶ 15; Dkt. Nos. 49 & 56: Def. & Bradshaw Rule 56.1 Stmts.

¶ 1.) At approximately 8:40 P.M., Bradshaw was approached by three Hispanic inmates while

watching television in the prison common area where defendant Correction Officer Hernandez stood guard.  (Compl. ¶¶ 16-18; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 2-3; Def. Rule 56.1 Stmt. Ex. B: Bradshaw Dep. at 28-30, 37.)  The inmates told Bradshaw to "lock in," i.e., return to his cell, and "told [Officer Hernandez] to turn off the TV," which he did, even though it was twenty minutes before the prison's 9 P.M. "lock in time."  (Bradshaw Dep. at 36, 52.)  When Bradshaw responded that it was not yet 9 P.M., the inmates threatened Bradshaw and "call[ed] [him] racial slurs." (Bradshaw Dep. at 37, 53.)  The inmates continued threatening Bradshaw as he walked to his cell; Bradshaw claims that Officer Hernandez, who "was standing right there," never ordered them to stop and "was all for it."  (Bradshaw Dep. at 37, 53; Def. & Bradshaw Rule 56.1 Stmts. ¶ 4.)

Officer Hernandez observed the inmates follow Bradshaw into his cell that was "in pla[in] view" of the common area.  (Bradshaw Dep. at 53-54; Def. & Bradshaw Rule 56.1 Stmts. ¶ 6.)  The inmates attacked Bradshaw, punching and kicking him in his upper body and head, and one inmate bit Bradshaw on his back.  (Bradshaw Dep. at 53-57; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 7-9; Compl. ¶ 16.)  Bradshaw suffered a bloody lip and hand, a bite mark on his back, back pain, a headache, and bruising on his face.  (Bradshaw Dep. at 65-66, 83; Def. & Bradshaw Rule 56.1 Stmts. ¶ 15; Compl. ¶ 19.)

Bradshaw screamed for help during the attack, but Officer Hernandez, who was "looking into [Bradshaw's] cell" from the common area and "watching it" happen, did nothing to intervene.  (Bradshaw Dep. at 58-59, 66, 95; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 10-11; Compl. ¶¶ 17-18.)  The attack lasted five to seven minutes, after which Bradshaw observed Officer Hernandez "still present in the same place" in the common area, approximately "three to four feet away from [his] cell."  (Bradshaw Dep. at 58-59, 62-65; Compl. ¶ 16; Def. & Bradshaw Rule 56.1 Stmts. ¶ 11.)

Bradshaw suspects that Officer Hernandez did not intervene because Officer Hernandez and the assailants are Hispanic, and Bradshaw is black. (Bradshaw Dep. at 29, 49-52; Def. & Bradshaw Rule 56.1 Stmts. ¶ 13.) On one occasion, Bradshaw "kept asking [Officer Hernandez] for a blanket . . . in the cold winter and he didn't get it"; Bradshaw stated that "when Hispanic prisoners ask [Officer Hernandez] for things, it's done more immediately." (Bradshaw Dep. at 51-52.) Bradshaw also noted that when his assailants asked Officer Hernandez to shut off the television prior to the assault, Officer Hernandez did so. (Bradshaw Dep. at 49, 53.) Bradshaw admits, however, that he "can't really say" that Officer Hernandez was "being . . . racist." (Bradshaw Dep. at 52; Def. & Bradshaw Rule 56.1 Stmts. ¶ 13.)

Afterwards, Bradshaw told defendant Captain Bailey about the assault and that Officer Hernandez did not intervene. (Bradshaw Dep. at 67; Def. & Bradshaw Rule 56.1 Stmts. ¶ 16; Compl. ¶ 21.) Captain Bailey instructed Bradshaw to "lock in," and "threatened to call the Probe Team" when Bradshaw requested medical treatment and to be removed from the housing unit as he feared for his safety. (Bradshaw Dep. at 68-69; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 17-18; Compl. ¶¶ 22-23.) However, "after an argument" with Bradshaw, Captain Bailey moved Bradshaw to the intake area. (Bradshaw Dep. at 69-70; Def. & Bradshaw Rule 56.1 Stmts. ¶ 19; Compl. ¶ 23.) While in the intake area, Bradshaw claims that defendant Captain Latanya Brown

> was deliberately indifferent by (i) threatening to physically force [Bradshaw] in[to] the 7 North housing unit where he was removed due to threats of assault by the regular 7-3 tour officer; (ii) threatening to physically force [Bradshaw] in[to] the 5 West housing unit where he was attacked; (iii) denying [Bradshaw's] request for necessary medical assistance; (iv) disregarding [Bradshaw's] need to be re-located; and (v) having [Bradshaw] remain in the Intake [unit] without a bed for seven (7) days.

(Compl. ¶ 24; see Def. & Bradshaw Rule 56.1 Stmts. ¶ 21.)  Bradshaw's intake area cell contained a sink, toilet, and a concrete bench.  (Bradshaw Dep. at 110; Def. & Bradshaw Rule 56.1 Stmts. ¶ 34.)

Bradshaw received medical treatment on the evening of November 24, 2015 into November 25, 2015 for the injuries he sustained during the November 20, 2015 attack.  (Bradshaw Dep. at 79; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 22-23; Def. Rule 56.1 Stmt. Ex. C: 11/24/15-11/25/15 Grandoit Notes; Compl. ¶ 26.)  PA Jean Grandoit examined Bradshaw and noted that Bradshaw "was involved in a fight with another inmate on . . . 11/20/2015 [and] claimed he was bit[] by another inmate in the back."  (11/25/15 Grandoit Notes at 1; Def. & Bradshaw Rule 56.1 Stmts. ¶ 25.)  PA Grandoit observed that Bradshaw had a "healed human bite [mark] in the left upper back area," "a small scratch mark in the 2nd digit of the left hand" and "[t]iny bruises on [his] forehead." (11/25/15 Grandoit Notes at 1-2; Def. & Bradshaw Rule 56.1 Stmts. ¶ 26; Compl. ¶ 27.)  Bradshaw was not prescribed any medication nor was he referred to a physician for further treatment. (Bradshaw Dep. at 83-84; Def. & Bradshaw Rule 56.1 Stmts. ¶ 27.)  Bradshaw's injuries did not prevent him from eating, drinking, walking, sitting or sleeping, and aside from back pain from the bite which lasted a week, his pain completely subsided "[t]wo to three days" after the incident. (Bradshaw Dep. at 83-86; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 28-29.)

Bradshaw testified that he believes that New York City Department of Corrections ("DOC") policy mandates that correction officers protect inmates from assaults by other inmates. (Bradshaw Dep. at 99; Def. & Bradshaw Rule 56.1 Stmts. ¶ 30.)  However, according to Bradshaw, DOC has "an unwritten policy of allowing inmates to assault other inmates and to try to cover up those assaults by not documenting it and reporting them as they [are] supposed to." (Bradshaw Dep. at 100; Def. & Bradshaw Rule 56.1 Stmts. ¶ 31.)  Bradshaw testified that he did not know "how

many officers . . . allow inmates to fight without intervening."  (Bradshaw Dep. at 100; Def. & Bradshaw Rule 56.1 Stmts. ¶ 32.)

**The November 25, 2015 Incident**

On November 25, 2015, Bradshaw remained in an MDC intake unit cell that had a rectangular food slot built into the door.  (Dkt. Nos. 49 & 56: Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 33, 37; Def. Rule 56.1 Stmt. Ex. B: Bradshaw Dep. at 107, 110.)  At approximately 1 P.M. (Bradshaw Dep. at 135), defendant Correction Officer Alphonse opened the door slot and passed a food tray to Bradshaw (Bradshaw Dep. at 113; Def. & Bradshaw Rule 56.1 Stmts. ¶ 37).  After Officer Alphonse handed Bradshaw the tray, Bradshaw "kept [his] hand[s] in the slot so that . . . Officer Alphonse wouldn't close it," because Bradshaw "was trying to get the attention of the captain [Brown] who was ignoring [him] all day, [as he] was requesting to see mental health." (Bradshaw Dep. at 116; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 35-36, 38-40.)

Officer Alphonse "immediately" closed the slot without first asking Bradshaw to remove his hands.  (Bradshaw Dep. at 117-18; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 41-43.) "Officer Alphonse . . . leaned his body against [the slot] for approximately a minute or two" while Bradshaw's hands remained trapped.  (Bradshaw Dep. at 116-17, 119; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 42-43; Dkt. No. 2: Compl. ¶ 28.)  At some point, Officer Alphonse "stopped leaning on the slot with his body," but "still kept the pressure on the slot with . . . one hand," and used the other to hit Bradshaw's left hand with his radio "three or four times."  (Bradshaw Dep. at 122-24; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 44-46; Compl. ¶ 28.)  Bradshaw eventually pulled his hands from the slot (Bradshaw Dep. at 123); Bradshaw threw a cup of water at Officer Alphonse "in retaliation" "as soon as [he] got [his] hand out of the slot" (Bradshaw Dep. at 126-27; Def. & Bradshaw Rule 56.1 Stmts. ¶ 48).

Officer Alphonse "proclaim[ed] that he was coming in [Bradshaw's cell] to beat [him] up," but Captain Brown prevented him from doing so. (Bradshaw Dep. at 128-29.) Bradshaw claims that Captain Brown must have witnessed Officer Alphonse shut Bradshaw's hands in the food slot "because of how the intake area is . . . set up." (Bradshaw Dep. at 129; Def. & Bradshaw Rule 56.1 Stmts. ¶ 49.) Bradshaw alleges that DOC has a "policy [of] officers assaulting prisoners and falsifying reports and records and proclaiming that the prisoner[] was the one . . . that did the assault." (Bradshaw Dep. at 133; Def. & Bradshaw Rule 56.1 Stmts. ¶ 59.)

Bradshaw sustained a gash to his left middle finger as a result of the incident (Bradshaw Dep. at 124-25, 133-34; Def. & Bradshaw Rule 56.1 Stmts. ¶ 47), and he asked Captain Brown and other DOC staff for medical treatment (Bradshaw Dep. at 134; Def. & Bradshaw Rule 56.1 Stmts. ¶ 50). Bradshaw obtained medical treatment at approximately 10:30 P.M. that evening from Dr. David Kerrison. (Bradshaw Dep. at 135-36; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 51-52; Def. Rule 56.1 Stmt. Ex. D: 11/25/15 Kerrison Notes at 1; Compl. ¶¶ 30-31.) Dr. Kerrison's notes state: "Patient had L hand slammed in metal slot door. L 2nd finger in[j]ured. Sustained laceration to palmar surface of L 2nd finger & he c/o pain & swelling." (11/25/15 Kerrison Notes at 1; Def. & Bradshaw Rule 56.1 Stmts. ¶ 52; Compl. ¶ 32.) Dr. Kerrison diagnosed Bradshaw with a finger contusion and "L 2nd finger laceration" with swelling and tenderness. (11/25/15 Kerrison Notes at 2; Def. & Bradshaw Rule 56.1 Stmts. ¶ 52.)

Dr. Kerrison cleaned and bandaged Bradshaw's finger wound and prescribed ibuprofen, before referring Bradshaw to Urgicare "for wound closure of L 2nd digit laceration & for splint if deemed necessary." (11/25/15 Kerrison Notes at 2; Def. & Bradshaw Rule 56.1 Stmts. ¶ 53.) Urgicare physicians "glued the wound[] shut" and performed an x-ray of Bradshaw's hand that revealed no fractures. (Bradshaw Dep. at 136-38; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 54-56.)

Following his treatment with Dr. Kerrison and Urgicare, Bradshaw requested no further treatment because he felt that his wounds were fully treated, and fully healed within two weeks. (Bradshaw Dep. at 138; Def. & Bradshaw Rule 56.1 Stmts. ¶¶ 57-58.)

**Bradshaw's Complaint And Defendants' Partial Summary Judgment Motion**

Bradshaw brings claims under 42 U.S.C. § 1983 against the individual defendants (Officers Hernandez and Alphonse, and Captains Bailey and Brown) for excessive force, failure to intervene, denial of medical treatment and a violation of the Equal Protection Clause, along with a Monell claim against the City for its alleged policy of subjecting inmates to excessive force and for negligent hiring, training and supervision, among other claims. (See Dkt. No. 2: Compl. ¶¶ 35-64.) Bradshaw also brings New York state law claims for negligence; assault; battery; false imprisonment; negligent hiring, training and supervision; and intentional infliction of emotional distress. (Compl. ¶¶ 65-89.) Defendants move for partial summary judgment, arguing that Bradshaw's Monell claim against the City, denial of medical treatment claim, Equal Protection claim and state law claims should be dismissed. (See generally Dkt. No. 50: Def. Br.)

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[1]

---

[1] See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36;
(continued...)

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions."  Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they

---

[1]/     (...continued)
Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

suggest'").[2]  "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[3]

## II.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRADSHAW'S MUNICIPAL LIABILITY CLAIMS

### A.  Legal Standards Governing Municipal Liability Claims

It is well established that a municipality may not be held liable under Section 1983 for alleged unconstitutional actions by its employees below the policy-making level solely upon the basis of respondeat superior.  E.g., Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Johnson v. N.Y.C. Police Dep't, No. 15-1379, 2016 WL 3277261 at *2 (2d Cir. June 8, 2016); Littlejohn v. City of N.Y., 795 F.3d 297, 314-15 (2d Cir. 2015).[4]

---

[2]  See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[3]  See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

[4]  See also, e.g., Patterson v. Cty. of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); (continued...)

Rather, in order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy. See, e.g., Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S. Ct. 1292, 1297-300 (1986); Johnson v. N.Y.C. Police Dep't, 2016 WL 3277261 at *2; Littlejohn v. City of N.Y., 795 F.3d at 314-15.[5/]

The plaintiff need not identify an explicit, official policy or practice. See, e.g., Littlejohn v. City of N.Y., 795 F.3d at 314-15; Newton v. City of N.Y., 779 F.3d 140, 152 (2d Cir. 2015), cert. denied, 136 S. Ct. 795 (2016).[6/] It is sufficient to show a widespread pattern of behavior that constitutes a "custom or usage with the force of law" or "the constructive acquiescence of senior

---

[4/]    (...continued)
Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991); White v. Cty. of Dutchess, 15 Civ. 8744, 2016 WL 4449720 at *5 (S.D.N.Y. Aug. 23, 2016); Walker v. Ponte, 14 Civ. 8507, 2016 WL 4411415 at *8 (S.D.N.Y. Aug. 18, 2016); Muhammad v. N.Y.C., 15 Civ. 5603, 2016 WL 4367970 at *5 (S.D.N.Y. Aug. 12, 2016); Roberts v. City of N.Y., 14 Civ. 5198, 2016 WL 4146135 at *7 (S.D.N.Y. Aug. 2, 2016).

[5/]    See also, e.g., Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir. 2011); Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983); Masciotta v. Clarkstown Cent. Sch. Dist., 14 Civ. 7128, 2016 WL 4449660 at *11 (S.D.N.Y. Aug. 23, 2016); Jones v. City of N.Y., No. 16-CV-1289, 2016 WL 4435220 at *2 (E.D.N.Y. Aug. 19, 2016); Walker v. Ponte, 2016 WL 4411415 at *8; Sanabria v. Tezlof, 11 Civ. 6578, 2016 WL 4371750 at *8 (S.D.N.Y. Aug. 12, 2016); Muhammad v. N.Y.C., 2016 WL 4367970 at *5; Roberts v. City of N.Y., 2016 WL 4146135 at *7.

[6/]    See also, e.g., Prince v. Cty. of Nassau, 563 F. App'x 13, 16 (2d Cir. 2014); Patterson v. Cty. of Oneida, 375 F.3d at 226; Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992); White v. Cty. of Dutchess, 2016 WL 4449720 at *5-6; Campbell v. Ponte, 15 Civ. 8048, 2016 WL 3948103 at *4 (S.D.N.Y. July 19, 2016); Cofield v. Nassau Cty., No. 15CV5768, 2016 WL 3460377 at *3 (E.D.N.Y. June 21, 2016); Goodwine v. City of N.Y., 15 Civ. 2868, 2016 WL 3017398 at *9 (S.D.N.Y. May 23, 2016); Thomsen v. City of N.Y., 15 Civ. 2668, 2016 WL 590235 at *10 (S.D.N.Y. Feb. 11, 2016), appeal withdrawn (May 23, 2016).

policy-making officials." Patterson v. Cty. of Oneida, 375 F.3d at 226 (quotations omitted); see, e.g., Connick v. Thompson, 563 U.S. at 61, 131 S. Ct. at 1359 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); Belpasso v. City of N.Y., 07 Civ. 3627, 2008 WL 2676579 at *5 (S.D.N.Y. July 2, 2008); Gorton v. Gettel, 04 Civ. 0236, 2007 WL 2154193 at *9 (S.D.N.Y. June 22, 2007), aff'd, 554 F.3d 60 (2d Cir. 2009). "A policy, custom, or practice may also be inferred where 'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" Patterson v. Cty. of Oneida, 375 F.3d at 226; see, e.g., Connick v. Thompson, 563 U.S. at 61, 131 S. Ct. at 1359. Any analysis of an allegation of municipal liability under § 1983 begins with "the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

**B.      Bradshaw Cannot Establish Municipal Liability**

Bradshaw's complaint states that Captain Bailey and Captain Brown are responsible for the November 20 and November 25, 2015 incidents, respectively, "by being deliberately indifferent to the rights of others in failing to properly supervise and train their subordinate employees." (Dkt. No. 2: Compl. ¶ 42.) Bradshaw claims that DOC policies include "subjecting inmates to attack by other inmates, intentionally delaying inmates medical care and subjecting inmates to excessive force." (Compl. ¶ 56.) "In addition, the City of New York engaged in a policy . . . of inadequate screening, hiring, retaining, training, and supervising its employees." (Compl. ¶ 57.)

Bradshaw testified that he believes that DOC policy requires correction officers to protect inmates from assaults by other inmates, and that this policy was violated when he was

assaulted by three inmates on November 20, 2015 and Officer Hernandez failed to intervene.  (See pages 1-2, 4-5 above.)  Bradshaw claims that DOC "ha[s] . . . an unwritten policy of allowing inmates to assault other inmates and to try to cover up those assaults by not documenting it and reporting them as they [are] supposed to."  (See page 4 above.)  Bradshaw testified that he did not know "how many officers . . . allow inmates to fight without intervening."  (See pages 4-5 above.)  With respect to the November 25, 2015 incident, Bradshaw claimed that he was injured because DOC has a "policy [of] officers assaulting prisoners and falsifying reports and records and proclaiming that the prisoner[] was the one . . . that did the assault."  (See page 6 above.)

### 1.    Decisions By Final Policymakers

While "a single action on a policymaker's part is sufficient to create a municipal policy, [and thus] a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability," Bradshaw provides no evidence that any defendant had policymaking authority.  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004).  "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83, 106 S. Ct. 1292, 1299-300 (1986); see also, e.g., Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir.) ("It does not suffice for these purposes that the official has been granted discretion in the performance of his duties."), cert. denied, 531 U.S. 813, 121 S. Ct. 47 (2000).  Bradshaw

cannot establish that the individual defendants were municipal policymakers without further evidence regarding their respective roles and authority within DOC.[7]

## 2. Deliberate Indifference To A Widespread Practice

To establish municipal liability, a plaintiff may show that "'a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials.'" Littlejohn v. City of N.Y., 795 F.3d 297, 315 (2d Cir. 2015); see also, e.g., Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) ("[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city "policy or custom" that is actionable under § 1983.'"); Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir.) ("[I]t is well established

---

[7]  See, e.g., Moton v. City of N.Y., 15 Civ. 6485, 2017 WL 2779784 at *3 (S.D.N.Y. June 15, 2017) ("Plaintiff does not claim that Captain Williams had any policymaking authority."); Delrosario v. City of N.Y., 07 Civ. 2027, 2010 WL 882990 at *6 (S.D.N.Y. Mar. 4, 2010) ("Plaintiff did not . . . depose any prison officials, including [Captains] Boden and Vasaturo, or produce any discovery relating to the role of Boden and Vasaturo at Riker's. Plaintiff has produced no evidence as to what authority each had, what guidelines and policies they were subject to, and what oversight was in place. Accordingly, the Court cannot allow this claim to go forward on a theory that either Captain Vasaturo or Boden had final policymaking authority."); Springle v. Metro. Transp. Auth., 06 Civ. 734, 2008 WL 331362 at *7 (S.D.N.Y. Feb. 1, 2008) (Plaintiff "has failed to adduce any evidence demonstrating that Kennedy was an official with 'final policymaking authority.'"); Rubio v. Cty. of Suffolk, No. 01-CV-1806, 2007 WL 2993813 at *7 (E.D.N.Y. Oct. 9, 2007) ("[P]laintiffs failed to show how the several named lieutenants and sergeants, as well as the Chief of Police, had the policymaking authority necessary to bind the County. The fact that the sergeants, lieutenants, or the Chief of Police had discretion to process or investigate [plaintiff's] complaint does not alone give rise to liability."), aff'd, 328 F. App'x 36 (2d Cir. 2009); Stovall v. City of N.Y., 87 Civ. 4961, 1988 WL 249389 at *4 (S.D.N.Y. Dec. 8, 1988) ("There is nothing in the papers submitted in support of this motion to indicate that Captain Ridge had any such final policymaking authority so that his decisions became municipal 'policy' for the purposes of § 1983 liability.").

that a municipal policymaker may be found to have caused subordinate officials' conduct by reason of the policymaker's 'acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'"), <u>cert. denied</u>, 531 U.S. 813, 121 S. Ct. 47 (2000).

The Court considers whether Bradshaw's allegations of Officer Hernandez's failure to intervene during an inmate assault and Office Alphonse's use of excessive force (<u>see</u> pages 1-6 above) suffice to establish deliberate indifference to a widespread practice.[8/]

Bradshaw cannot establish that these incidents "were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities," <u>i.e.</u>, municipal policymakers, "must have been aware" but ignored. <u>Jones</u> v. <u>Town of E. Haven</u>, 691 F.3d 72, 81 & n.6 (2d Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 125 (2013). The handful of alleged incidents were committed by non-policymaking employees and, while close in time and within the same facility, were not so "widespread and persistent" as to trigger municipal liability on these facts. <u>See</u>, <u>e.g.</u>, <u>Rubio</u> v. <u>Cty. of Suffolk</u>, 328 F. App'x 36, 38 (2d Cir. 2009) ("[W]e agree with the District Court that 'a few violations by a small group of subordinate County employees with no policymaking authority [cannot] amount to the pervasive and widespread custom or practice necessary for municipal

---

[8/] Bradshaw also challenges Captain Bailey and Captain Brown's refusal to provide prompt medical care after each incident. (<u>See</u> pages 3-6 above.) Because these two alleged denials of medical care do not, for reasons discussed below, rise to the level of a constitutional violation, they cannot support municipal liability. <u>See</u>, <u>e.g.</u>, <u>Borg</u> v. <u>Town of Wesport</u>, 685 F. App'x 10, 11 n.2 (2d Cir. 2017) ("[W]ithout an underlying constitutional violation, Plaintiffs' claim under <u>Monell</u> . . . cannot stand."); <u>Segal</u> v. <u>City of N.Y.</u>, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under <u>Monell</u> was entirely correct.").

liability.'"); <u>Giaccio</u> v. <u>City of N.Y.</u>, 308 F. App'x 470, 472 (2d Cir. 2009) (Plaintiff "identifies, at most, only four examples where the defendants might have disclosed positive drug test results. This evidence falls far short of establishing a practice that is 'so "persistent or widespread"' as to justify the imposition of municipal liability."); <u>Joseph</u> v. <u>Doe</u>, No. 16-CV-2004, 2017 WL 4233024 at *9 (E.D.N.Y. Sept. 22, 2017) ("[T]hree examples of police officers carrying out unlawful arrests is not enough to plausibly allege a pattern of violations in a police department consisting of tens of thousands of officers."); <u>Calicchio</u> v. <u>Sachem Cent. Sch. Dist.</u>, 185 F. Supp. 3d 303, 316 (E.D.N.Y. 2016) ("'There is no "magic number" of instances of unconstitutional conduct that will suffice to permit the inference of a broader municipal policy or custom.' However, courts in this Circuit have rejected the notion that two, three or even four incidents will support such an inference." (citation omitted, citing cases)).

### 3. <u>Failure To Train, Supervise, Discipline and Screen</u>

#### a. <u>Failure To Train</u>

To establish a failure-to-train claim, "at the summary judgment stage, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" <u>Green</u> v. <u>City of N.Y.</u>, 465 F.3d 65, 81 (2d Cir. 2006); <u>see also</u>, <u>e.g.</u>, <u>Okin</u> v. <u>Vill. of Cornwall-On-Hudson Police Dep't</u>, 577 F.3d 415, 440 (2d Cir. 2009) ("The plaintiff must offer evidence to support the conclusion that the training program was inadequate."); <u>Amnesty Am.</u> v. <u>Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004); <u>Williams</u> v. <u>City of N.Y.</u>, 16 Civ. 4315, 2017 WL 4158903 at *5 (S.D.N.Y. Sept. 14, 2017). "A pattern of misconduct, while perhaps suggestive of inadequate training, is not enough to create a triable issue of fact on a failure-to-train theory." <u>Okin</u> v. <u>Vill. of Cornwall-On-Hudson Police Dep't</u>, 577 F.3d at 440. Bradshaw cites no

evidence regarding the City or DOC's training procedures, let alone that those procedures were inadequate and "actually caused" his injuries.[9]

**b.      Failure To Supervise**

To prevail on a failure to supervise claim, "plaintiffs must establish [the municipality's] deliberate indifference by showing that 'the need for more or better supervision to protect against constitutional violations was obvious,' but that [the municipality] made 'no meaningful attempt' to forestall or prevent the unconstitutional conduct." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Vann v. City of N.Y., 72 F.3d 1040, 1049 (2d Cir. 1995); see also, e.g., An v. City of N.Y., 230 F. Supp. 3d 224, 230-31 (S.D.N.Y. 2017); Walker v. City of N.Y., 14 Civ. 808, 2015 WL 4254026 at *10 (S.D.N.Y. July 14, 2015) ("In order for a plaintiff to prove deliberate indifference with respect to failure to supervise/discipline, he must plead one of two

---

[9]      See, e.g., Amnesty Am. v. Town of W. Hartford, 361 F.3d at 130 ("Plaintiffs here have proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused the police officers to use excessive force at the second demonstration.  Plaintiffs' failure to train theory is based solely on their evidence that the police used excessive force on two successive occasions."); Marsh v. Town of E. Hartford, No. 16-CV-928, 2017 WL 3038305 at *7 (D. Conn. July 18, 2017) ("The failure to offer evidence regarding the Town's training program will make it impossible for the plaintiff to identify a specific deficiency in that program, let alone that the deficiency actually caused the alleged constitutional violation."); Boyd v. Smereczynsky, No. 16-CV-394, 2017 WL 1100426 at *4 (D. Conn. Mar. 23, 2017) (Plaintiff "does not allege any specific deficiency in New Haven's police officer training regimen that caused her injuries, a fatal gap."); Delrosario v. City of N.Y., 07 Civ. 2027, 2010 WL 882990 at *7 (S.D.N.Y. Mar. 4, 2010) ("In this case, Plaintiff has failed to conduct any discovery as to the training that prison officials undergo regarding the housing of cooperating witnesses, the provision of medical care or—for that matter—any training at the DOC in general.").

combinations of facts.  First, a plaintiff may establish that (1) 'there was a pattern of <u>allegations of or complaints</u> about similar unconstitutional activity,' and (2) 'that the municipality consistently <u>failed to investigate</u> those allegations.'   Alternatively, a plaintiff may plead (1) 'that there was a pattern of <u>actual</u> similar constitutional violations,' and (2) 'the municipality consistently <u>failed to discipline</u> those involved.'" (citation omitted)).

Aside from his own allegedly unconstitutional treatment, Bradshaw points to no evidence that City or DOC officials failed to act when presented with an obvious need for more or better supervision.  Nothing in the record describes the supervision DOC employees received, defendants' disciplinary history, or what investigation was conducted by the City or DOC following Bradshaw's, or any other inmate's, allegations.  <u>See</u>, <u>e.g.</u>, <u>Missel</u> v. <u>Cty. of Monroe</u>, 351 F. App'x 543, 546 (2d Cir. 2009) (Plaintiff "has made insufficient factual allegations that the County Defendants were on notice of and took no action in response to [Deputy] Hildreth's conduct, or that Hildreth had a history of such behavior that Defendants deliberately ignored."); <u>Selvaggio</u> v. <u>Patterson</u>, 93 F. Supp. 3d 54, 79 (E.D.N.Y. 2015) ("[E]ven if these five varied allegations over the course of a ten-year-period were sufficient to put the City on notice of a constitutional problem, Plaintiff has failed to come forward with evidence to suggest that the City did not meaningfully investigate the allegations; indeed, she has 'presented no evidence as to the municipality's response to any prior incident of misconduct.'"); <u>Walker</u> v. <u>City of N.Y.</u>, 63 F. Supp. 3d 301, 312 (E.D.N.Y. 2014) ("Plaintiffs have not identified any additional, similar examples of unconstitutional practices beyond the events they complain of here . . . .  The failure to identify any such example is fatal to Plaintiffs' failure-to-supervise claim." (record citation omitted)), <u>aff'd</u>, 621 F. App'x 74 (2d Cir. 2015).

### c. **Failure To Discipline**

"[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of <u>Monell</u>." <u>Batista</u> v. <u>Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983). "'Where plaintiffs seek to hold a municipality liable under a theory of failure to . . . discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference.'" <u>Swanson</u> v. <u>City of N.Y.</u>, No. 16-CV-3231, 2017 WL 3130322 at *14 (E.D.N.Y. July 21, 2017); <u>accord</u>, <u>e.g.</u>, <u>Moses</u> v. <u>Westchester Cty. Dep't of Corr.</u>, 10 Civ. 9468, 2017 WL 4386362 at *14 (S.D.N.Y. Sept. 29, 2017).

As with Bradshaw's failure to supervise claim, there is no evidence that City or DOC officials have inadequately disciplined DOC personnel who violated prisoners' constitutional rights in this case or any other. <u>See</u>, <u>e.g.</u>, <u>Harris</u> v. <u>City of Newburgh</u>, 16 Civ. 2731, 2017 WL 4334141 at *7 (S.D.N.Y. Sept. 27, 2017) ("Plaintiff's conclusory allegation that 'the City Council and City Manager have failed and refused to punish or attempt to punish police officers who have engaged in conduct abusive of citizens' rights,' does not contain sufficient facts to allow the Court to draw the inference that there is a history of consistently failing to discipline officers." (record citation omitted)); <u>Ferreira</u> v. <u>City of Binghamton</u>, No. 13-CV-107, 2016 WL 3129224 at *7 (N.D.N.Y. June 2, 2016) ("Plaintiff points to no systematic and repeated failures to discipline and oversee officers' conduct in a way that would lead a juror to conclude 'that the city's policymakers were "knowingly and deliberately indifferent to the possibility that the police officers were wont" to violate the constitutional rights of arrestees.' The evidence cited by the Plaintiff instead points to the failings of the Binghamton Police in this particular incident." (citation omitted)); <u>Delrosario</u> v. <u>City of N.Y.</u>, 07 Civ. 2027, 2010 WL 882990 at *8 (S.D.N.Y. Mar. 4, 2010) ("Plaintiff has failed to put forth any

evidence that the City or DOC failed to adequately discipline its personnel. The record is completely silent with respect to how the DOC responded to complaints against its personnel.").

### d.    **<u>Failure to Screen Employees</u>**

Municipal liability claims asserting a failure to screen employees also require a showing of deliberate indifference. <u>See</u>, <u>e.g.</u>, <u>Aquino</u> v. <u>City of N.Y.</u>, 16 Civ. 1577, 2017 WL 384354 at *6 (S.D.N.Y. Jan. 25, 2017); <u>Lehal</u> v. <u>Cent. Falls Det. Facility Corp.</u>, 13 Civ. 3923, 2016 WL 7377238 at *8 (S.D.N.Y. Nov. 21, 2016). However, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl.</u> v. <u>Brown</u>, 520 U.S. 397, 411, 117 S. Ct. 1382, 1392 (1997); <u>accord</u>, <u>e.g.</u>, <u>Lehal</u> v. <u>Cent. Falls Det. Facility Corp.</u>, 2016 WL 7377238 at *8. "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that <u>this</u> officer was highly likely to inflict the <u>particular</u> injury suffered by the plaintiff." <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl.</u> v. <u>Brown</u>, 520 U.S. at 412, 117 S. Ct. at 1392; <u>accord</u>, <u>e.g.</u>, <u>Aquino</u> v. <u>City of N.Y.</u>, 2017 WL 384354 at *6.

Bradshaw presents no evidence regarding the backgrounds of any of the individual defendants, or that the City's or DOC's screening procedures were deficient. <u>See</u>, <u>e.g.</u>, <u>Noonan</u> v. <u>City of N.Y.</u>, 14 Civ. 4084, 2015 WL 3948836 at *5 (S.D.N.Y. June 26, 2015) ("Plaintiff has pleaded no facts that would support an inference that the City had reason to believe that Becker's background would predispose him to sexual misconduct, nor any facts indicating prior wrongdoing by Becker."); <u>Rogoz</u> v. <u>City of Hartford</u>, No. 11-CV-00500, 2012 WL 4372189 at *7 (D. Conn.

Sept. 24, 2012) ("Plaintiff has provided no facts in support of his failure to screen theory. Plaintiff's complete failure to mention how the particular backgrounds of the Defendant Officers would have in any way made it more likely that these officers would violate his federally protected rights is fatal to his claim.").

* * *

Defendants are GRANTED summary judgment as to Bradshaw's municipal liability ("Monell") claims with respect to each of the theories in his complaint.

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRADSHAW'S DENIAL OF MEDICAL TREATMENT CLAIM

### A. Legal Standards Governing Denial Of Medical Treatment Claims

"[N]ot every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Rather, a deliberate indifference to medical needs claim contains two requirements:

> First, the deprivation of medical care must have been 'sufficiently serious.' Second, the defendant must have acted or failed to act with 'a sufficiently culpable state of mind,' which, 'in prison conditions cases' is 'deliberate indifference to inmate health or safety.' Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective.

Smith v. Outlaw, 15 Civ. 9961, 2017 WL 4417699 at *2 (S.D.N.Y. Sept. 30, 2017) (citations omitted); see also, e.g., McKinney v. New Haven Police Dep't, No. 17-CV-1663, 2017 WL 5137583 at *4 (D. Conn. Nov. 6, 2017); Davis v. McCready, 14 Civ. 6405, 2017 WL 4803918 at *4-5 (S.D.N.Y. Oct. 23, 2017).[10]

---

[10]    Neither party addressed whether Bradshaw was convicted or a pretrial detainee in November 2015. (See generally Dkt. No. 50: Def. Br.; Dkt. No. 57: Bradshaw Br.) However, Bradshaw's complaint states: "On November 20, 2015, Plaintiff [was in] the care, custody and control of DOC in connection with a pending criminal proceeding and was incarcerated
(continued...)

As to the first requirement, "[o]nly deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Salahuddin v. Goord, 467 F.3d at 279 (quotations omitted). Determining whether an objectively serious deprivation occurred involves two inquiries:

> The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, "prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause," and, conversely, failing "to take reasonable measures" in response to a medical condition can lead to liability.

> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." In cases where the inadequacy is in the medical treatment given, the seriousness

10/ (...continued)
at Manhattan Detention Center." (Dkt. No. 2: Compl. ¶ 15, emphasis added.) Claims for deliberate indifference to medical needs brought by pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment. See, e.g., Smith v. Outlaw, 2017 WL 4417699 at *2 ("Plaintiff was a pretrial detainee of the City during the events giving rise to his claims and his allegations are thus assessed under the Due Process Clause of the Fourteenth Amendment. Deliberate indifference claims of pretrial detainees are not assessed under the Eighth Amendment because such detainees 'have not been convicted of a crime and thus may not be punished in any manner—neither cruelly nor otherwise.'" (citation omitted)). While the subjective element under the Fourteenth Amendment varies from Eighth Amendment cases, the objective element remains the same. See, e.g., White v. City of N.Y., 16 Civ. 6183, 2017 WL 3575700 at *3 (S.D.N.Y. Aug. 17, 2017) ("The objective prong is the same regardless of whether the plaintiff is a pretrial detainee or a prisoner."); Fernandini v. United States, 15 Civ. 3843, 2017 WL 3208587 at *7 n.5 (S.D.N.Y. July 26, 2017) (same); Cuffee v. City of N.Y., 15 Civ. 8916, 2017 WL 1134768 at *5 (S.D.N.Y. Mar. 27, 2017) (same). The Court in any event does not reach the subjective element of Bradshaw's claim as he cannot establish a "sufficiently serious" deprivation in care.

inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  Thus, although we sometimes speak of a "serious medical condition" as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

Id. at 279-80 (citations omitted); see also, e.g., Cooper v. Orange Cty., 15 Civ. 10075, 2017 WL 3309754 at *3-4 (S.D.N.Y. Aug. 2, 2017); Fernandini v. United States, 2017 WL 3208587 at *7.[11/]

---

[11/]   As the above passage from Salahuddin indicates, "'cases regarding inadequate medical care generally fall into two categories: denial of treatment and delay in treatment [and . . . ] the analyses are subtly different.'"  Ray v. Zamilus, 13 Civ. 2201, 2017 WL 4329722 at *8 (S.D.N.Y. Sept. 27, 2017).  "[W]hen medical treatment is denied for a prolonged period of time, or when a degenerative medical condition is neglected over sufficient time, the alleged deprivation of care can no longer be characterized as 'delayed treatment' but may properly be viewed as a 'refusal' to provide medical treatment."  Smith v. Carpenter, 316 F.3d 178, 189 n.10 (2d Cir. 2003); see also, e.g., Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) ("This is not a case of delayed treatment as the dissent suggests.  Defendants' conduct on this record can be construed as: (1) a flat refusal of medical treatment for a condition that if left untreated is serious and painful; or (2) a conditional refusal of such treatment, subject to Harrison's consent to undergo an unwanted medical procedure that would deprive him of a body part he wished to keep.").  Bradshaw does not claim that he was denied treatment altogether or that the treatment he received was inadequate; rather, Bradshaw's allegations focus on the delay in treatment until four days after the November 20, 2015 incident and nine hours after the November 25, 2015 incident.  (See generally Dkt. No. 2: Compl.; see pages 2-6 above.)  Bradshaw's injuries did not result in a "degenerative medical condition," and his treatment (except as further noted below) was not so delayed that it could be considered a denial of treatment altogether.  See, e.g., Salahuddin v. Goord, 467 F.3d at 281 & n.7 (five-month lapse in "course of treatment for an inmate's Hepatitis C" treated as delay in care); Fernandini v. United States, 2017 WL 3208587 at *8-9 ("Plaintiff alleges that he was bitten by a rat on his arm on January 6, 2014.  On January 9, 2014—three days later—Plaintiff received medical treatment for his bite . . . .  The allegations in the [complaint] do not suggest that the three-day delay in receiving medical treatment was 'needlessly prolonged.'" (record citation & fn. omitted)); Pierre v. Cty. of Broome, No. 05-CV-332, 2007 WL 625978 at *5 (N.D.N.Y. Feb. 23, 2007) ("[T]his is not a failure to treat case, but a delayed treatment case . . . .  Plaintiff offers insufficient evidence to show that the two to three month delay in the provision of proper medication presented a substantial risk of harm.").  The Court accordingly interprets Bradshaw's allegations as raising only a delay in treatment claim.

"Where the plaintiff alleges delay or interruption in treatment rather than failure to receive treatment, 'the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner.'" Patterson v. Westchester Cty., 13 Civ. 0194, 2014 WL 1407709 at *5 (S.D.N.Y. Apr. 11, 2014) (Peck, M.J.), R. & R. adopted, 2014 WL 2759072 (S.D.N.Y. June 16, 2014). Thus, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith v. Carpenter, 316 F.3d at 186; see also, e.g., Ray v. Zamilus, 2017 WL 4329722 at *8 ("Where a plaintiff 'suffered from a delay in treatment, rather than a complete lack of treatment, [however,] the objective element must be satisfied by harm that resulted from the delay.'"); Demeo v. Koenigsmann, 11 Civ. 7099, 2017 WL 2937619 at *8 (S.D.N.Y. July 7, 2017).

That is not to say that proof of physical harm is required. "[A]n Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm." Smith v. Carpenter, 316 F.3d at 188; see also, e.g., Shepherd v. Hogan, 181 F. App'x 93, 95 (2d Cir. 2006) ("A future risk can suffice to constitute a substantial risk of serious harm, even if an inmate experiences no present symptoms."). "Yet, although demonstrable adverse medical effects may not be required under the Eighth Amendment, the absence of present physical injury will often be probative in assessing the risk of future harm." Smith v. Carpenter, 316 F.3d at 188 (fn. omitted). The Court thus is "entitled to consider the absence of adverse medical effects in evaluating the objective sufficiency of [a plaintiff's] Eighth Amendment claim." Id. at 187.[12]

---

[12]  See also, e.g., Smith v. Carpenter, 316 F.3d at 187 ("The absence of adverse medical effects or demonstrable physical injury is one such factor that may be used to gauge the severity of the medical need at issue. Indeed, in most cases, the actual medical consequences that flow

(continued...)

**B.** **Bradshaw Has Not Established A Sufficiently Serious Deprivation**

Following the November 20, 2015 inmate assault, Bradshaw alleges that Officer "Hernandez, Captain Bailey and Captain Brown intentionally delayed [Bradshaw] access to medical care [for] almost four (4) days [until November 24, 2015] and w[ere] deliberately indifferent to [Bradshaw's] health and safety." (Dkt. No. 2: Compl. ¶ 38.) On November 25, 2015, Officer Alphonse allegedly assaulted Bradshaw at approximately 1 P.M., but Bradshaw did not receive treatment until approximately 10:30 P.M. that evening. (See pages 5-6 above.)

Bradshaw cannot establish that the respective four day and nine hour delays in treatment following these incidents were sufficiently serious. Bradshaw's November 20, 2015 injuries did not prevent him from eating, drinking, walking, sitting or sleeping, and, aside from back pain which lasted a week, his pain completely subsided "[t]wo to three days" after the incident. (See page 4 above.)[13] PA Grandoit observed that Bradshaw had a "healed human bite [mark] in the left

---

[12] (...continued)
from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." (citations & fn. omitted)); Ray v. Zamilus, 2017 WL 4329722 at *8; Villafane v. Sposato, No. 16-CV-3674, 2017 WL 4179855 at *20 (E.D.N.Y. Aug. 22, 2017), R. & R. adopted, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017).

[13] Even if Bradshaw's claim as to the November 20, 2015 incident can be viewed as a complete denial of medical care because much of his condition allegedly resolved prior to receiving treatment, defendants are still entitled to summary judgment given the lack of severity of Bradshaw's medical condition. See, e.g., Armand v. Simonson, 12 Civ. 7709, 2016 WL 1257972 at *14 (S.D.N.Y. Mar. 30, 2016) ("Here, Plaintiff has alleged that she had (1) scrapes on her legs, back, elbow, and arm, and (2) a 'pounding' headache. Numerous decisions by courts in the Second Circuit have held that scrapes are not sufficiently serious to implicate the Eighth Amendment." (record citation omitted, citing cases)); Goodwin v. Kennedy, No. 13-CV-1774, 2015 WL 1040663 at *12 (E.D.N.Y. Mar. 10, 2015) ("Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries similar to those Plaintiff sustained here 'are not sufficiently serious to support' a deliberate indifference claim." (citing cases)); Dallio v. Hebert, 678 F. Supp. 2d 35, 44
(continued...)

upper back area," "a small scratch mark in the 2nd digit of the left hand" and "[t]iny bruises on [his] forehead." (See page 4 above.) Bradshaw was not prescribed any medication nor was he referred to a physician for further treatment. (Id.) On November 25, 2015, Dr. Kerrison treated Bradshaw's cut finger several hours later by cleaning and bandaging the wound and prescribing ibuprofen; Urgicare physicians "glued the wound[] shut" and performed an x-ray of Bradshaw's hand that revealed no fractures. (See page 6 above.)

As to either incident, Bradshaw has not produced any evidence that his injuries worsened, or that he was subjected to an unreasonable risk of future harm, because of any delay. See, e.g., Fernandini v. United States, 15 Civ. 3843, 2017 WL 3208587 at *9 (S.D.N.Y. July 26, 2017) ("The allegations in the [complaint] do not suggest that the three-day delay in receiving medical treatment was 'needlessly prolonged.' While the Court accepts as true that Plaintiff felt pain from the bite, and that he experienced 'a burning sensation and numbness radiating up his arm and down to his hand,' nothing in the [complaint] suggests that the three-day wait time caused 'chronic and substantial pain' or worsened Plaintiff's condition."); Gantt v. Horn, 09 Civ. 7310, 2013 WL 865844 at *9 (S.D.N.Y. Mar. 8, 2013) (Plaintiff "has not alleged that any delays in his treatment caused any symptoms of his underlying illnesses to worsen, or that any delays materially altered the way his diseases have since affected him. Furthermore, [plaintiff] has not alleged, beyond making

---

13/ (...continued)
(N.D.N.Y. 2009) (Plaintiff's "cuts, bruises and pain sustained in an excessive force incident . . . [did] not amount to a condition of urgency that may produce death, degeneration or extreme pain." (citing cases)); Benitez v. Straley, 01 Civ. 0181, 2006 WL 5400078 at *12 (S.D.N.Y. Feb. 16, 2006) (Plaintiff "claims [defendants] were indifferent to his medical needs by refusing to render aid to a cut on his head . . . [and] his wrist injuries. [Plaintiff] has failed to demonstrate that these injuries were sufficiently serious. They are not permanent and there is no claim that they affect his daily activities." (record citations omitted)).

conclusory claims, that any delay in treatment, or any inadequacy of such treatment, has put him at an 'unreasonable risk of future harm.'"); Ferguson v. Cai, 11 Civ. 6181, 2012 WL 2865474 at *4 (S.D.N.Y. July 12, 2012) (Plaintiff "has not alleged that the single delay in treatment caused any symptoms of his underlying illness to worsen, nor that it materially altered the way in which his disease thereafter affected him.").  Moreover, Bradshaw's wounds were largely superficial, and either resolved on their own or were treated effectively despite the delay.[14]

Defendants' summary judgment motion is GRANTED as to Bradshaw's denial of medical treatment claim.

## IV.	DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON BRADSHAW'S EQUAL PROTECTION CLAIM

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1.  "[T]he Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'"  Kwong v. Bloomberg, 723 F.3d 160, 169 (2d Cir. 2013), cert. denied, 134 S. Ct. 2696 (2014).  "To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005); accord, e.g., Mishtaku v. Espada, 669 F. App'x 35, 36 (2d Cir. 2016).

---

[14]	Compare Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003) ("[T]he failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment."); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) ("A prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery.  But if prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment.").

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000). "A plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.' Or, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. A plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." Id. (citations omitted); accord, e.g., Bryant v. S. Country Cent. Sch. Dist., No. 14-CV-5621, 2017 WL 1216553 at *8 (E.D.N.Y. Mar. 31, 2017).

Bradshaw alleges that "the individual defendants[] failed to protect or delayed [Bradshaw] access to medical care intentionally because of his national origin, and/or race." (Dkt. No. 2: Compl. ¶ 43.) "By virtue of the foregoing," Bradshaw claims he "was deprived of his rights under the Equal Protection Clause of the United States Constitution." (Compl. ¶ 44.) Bradshaw suspects that Officer Hernandez did not intervene because Officer Hernandez and the assailants are Hispanic, and Bradshaw is black. (See page 3 above.) Bradshaw testified that on one occasion he "kept asking [Officer Hernandez] for a blanket . . . in the cold winter and he didn't get it"; Bradshaw stated that "when Hispanic prisoners ask [Officer Hernandez] for things, it's done more immediately." (Id.) Bradshaw also noted that when his assailants asked Officer Hernandez to shut off the television prior to their assault, Officer Hernandez did so. (Id.)

Bradshaw's observation that Officer Hernandez acts "more immediately" for Hispanic prisoners is entirely vague, and Bradshaw can only speculate that Officer Hernandez was racially motivated because he is Hispanic and Bradshaw is black. These conclusory allegations do not support an Equal Protection claim. See, e.g., Clyburn v. Shields, 33 F. App'x 552, 555 (2d Cir. 2002) ("[C]laims of race-based discrimination under the Equal Protection Clause . . . require that

intentional discrimination be alleged in a non-conclusory fashion."); <u>Traylor</u> v. <u>Hammond</u>, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) ("'[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened <u>because</u> the person is a member of that racial group.' 'The naked assertion by [a] plaintiff that "race was a motivating factor" without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss.'" (citation omitted)). Moreover, Bradshaw does not submit any evidence that the other defendants were racially motivated, or that any other prisoners, similarly situated or otherwise, were treated differently.

Bradshaw's claim that the individual defendants failed to intervene, denied him medical care, or otherwise treated him differently than other inmates based on his race thus is wholly speculative.[15/] <u>See</u>, <u>e.g.</u>, <u>Fleurizard</u> v. <u>City of New Haven</u>, No. 16-CV-01206, 2017 WL 4273614 at *7 (D. Conn. Sept. 26, 2017) ("Beyond alleging that Hines used racial epithets, [plaintiff] has not

---

[15/] Generally, a plaintiff is required to show similarly situated comparators whether pursuing a selective enforcement or "class of one" Equal Protection claim. <u>See</u>, <u>e.g.</u>, <u>33 Seminary LLC</u> v. <u>City of Binghamton</u>, 670 F. App'x 727, 729-30 (2d Cir. 2016), <u>cert. denied</u>, 2017 WL 3036772 (Oct. 2, 2017); <u>Artec Constr. & Dev. Corp.</u> v. <u>N.Y.C. Dep't of Hous. Pres. & Dev.</u>, 15 Civ. 9494, 2017 WL 782911 at *2-3 (S.D.N.Y. Feb. 27, 2017). The Second Circuit, however, has clarified that "a plaintiff who . . . alleges an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." <u>Pyke</u> v. <u>Cuomo</u>, 258 F.3d 107, 110 (2d Cir. 2001); <u>accord</u>, <u>e.g.</u>, <u>Patterson</u> v. <u>City of N.Y.</u>, No. 16-CV-3525, 2017 WL 3432718 at *9 (E.D.N.Y. Aug. 9, 2017). Yet plaintiffs still, "of course, [are] required to substantiate their claim that the [alleged violation] was motivated by racial discrimination." <u>Pyke</u> v. <u>Cuomo</u>, 258 F.3d at 110. To be clear, Bradshaw's claim fails because he has no competent evidence that any of the individual defendants were motivated by racial discrimination. The Court's reference to other similarly situated prisoners should not be interpreted as imposing a heightened evidentiary burden on Bradshaw; rather, the Court notes the absence of such evidence solely to clarify that Bradshaw has not presented any evidence—direct or circumstantial—to support an Equal Protection violation.

alleged any facts indicating that his treatment by the defendants was because of his race, nor has he alleged that persons of another race were treated differently. . . .  Additionally, mere racial epithets are alone insufficient to state a claim under the Fourteenth Amendment, without some additional allegation linking the racial epithet to adverse treatment in violation of his rights."); West v. Goord, No. 05-CV-447, 2017 WL 3251253 at *16 (W.D.N.Y. July 31, 2017) ("Here, Plaintiff submits no evidence sufficient to raise a triable issue of fact that he was treated differently or intentionally discriminated against as an African-American inmate. . . .  Plaintiff does not argue, much less submit any proof, that the restriction in facility access was either racially motivated or that it was applied to him and not other, similarly-situated inmates."); Bennett v. Care Corr. Sol. Med. Contracter, 15 Civ. 3746, 2017 WL 1167325 at *10 n.17 (S.D.N.Y. Mar. 24, 2017) ("[T]he Court could construe Plaintiff's claim that he was 'racially profiled' as an Equal Protection Claim under the Fourteenth Amendment. . . .  Here, Plaintiff has not pled any facts that suggest he was treated differently than other prisoners based on his race.").  Defendants' summary judgment motion as to Bradshaw's Equal Protection claim is GRANTED.

## V. DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON BRADSHAW'S STATE LAW NEGLIGENCE CLAIMS, BUT NOT THE INTENTIONAL TORT CLAIMS, AGAINST THE INDIVIDUAL DEFENDANTS

### A. Legal Standards Governing New York's Notice Of Claim Statutes

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999); see also, e.g., Santiago v. City of N.Y., 697 F. App'x 36, 38 (2d Cir. 2017) ("Finally, to the extent [plaintiff] argues that, because he filed suit in federal court, his state law claims are not subject to dismissal for failure to comply with New York State's notice-of-claim requirement, N.Y. Gen. Mun. Law § 50-e, he is mistaken."). State notice of claim statutes apply even where a plaintiff brings suit under, for example, § 1983 and

includes pendent state law claims.  See, e.g., Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d at

793; Hardy v. Daly, 16 Civ. 8443, 2017 WL 3917162 at *3 (S.D.N.Y. Sept. 6, 2017); Cruz v. City

of N.Y., 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017).

Subject to certain exceptions, a notice of claim is a condition precedent to suit against

the City or its employees.  See, e.g., Jean-Laurent v. Wilkerson, 461 F. App'x 18, 24 n.3 (2d Cir.

2012) ("A notice of claim is a condition precedent to the filing of an action against an employee of

the City of New York."); Harvey v. City of N.Y., No. 16-CV-00901, 2017 WL 5027886 at *3

(E.D.N.Y. Oct. 30, 2017); Johnson v. City of N.Y., 15 Civ. 8195, 2017 WL 2312924 at *7 (S.D.N.Y.

May 26, 2017); Vargas v. City of N.Y., 105 A.D.3d 834, 836, 963 N.Y.S.2d 278, 280 (2d Dep't

2013) ("'[P]ersons seeking to recover in tort against a municipality are required, as a precondition

to suit, to serve a Notice of Claim.'").  "Notice of claim requirements 'are construed strictly by New

York state courts.'  Failure to comply with these requirements ordinarily requires a dismissal for

failure to state a cause of action."  Hardy v. N.Y.C Health & Hosp. Corp., 164 F.3d at 793-94

(citations omitted); accord, e.g., Kennedy v. Arias, 12 Civ. 4166, 2017 WL 2895901 at *12

(S.D.N.Y. July 5, 2017); Molina v. Cty. of Westchester, 16 Civ. 3421, 2017 WL 1609021 at *6

(S.D.N.Y. Apr. 28, 2017).

New York's notice of claim statute, titled "Civil actions against employees of the city

of New York," states: "No action or proceeding instituted hereunder . . . shall be prosecuted or

maintained against the city or any agency or an employee unless notice of claim shall have been

made and served upon the city in compliance with section fifty-e of this chapter and within ninety

days after the claim arises."  Gen. Mun. Law § 50-k(6).  Section 50-e, in turn, states:

> In any case founded upon tort where a notice of claim is required by law as a
> condition precedent to the commencement of an action . . . against a public
> corporation, as defined in the general construction law, or any officer, appointee or

employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.

Gen. Mun. Law § 50-e(1)(a). The general construction law defines "public corporation" as including "a municipal corporation," which itself is defined as "a county, city, town, village [or] school district." Gen. Constr. Law § 66(1)-(2).

### B. Bradshaw's Claims Against The City Are Dismissed For Failure to Serve A Notice Of Claim

Bradshaw brings six state law tort claims against defendants for negligence; assault; battery; false imprisonment; negligent hiring, training and supervision; and intentional infliction of emotional distress. (Dkt. No. 2: Compl. ¶¶ 65-89.)[16] Defendants argue that Bradshaw never served a notice of claim in accordance with New York law. (Dkt. No. 50: Def. Br. at 16-17.) In response, Bradshaw claims that he "filed a timely notice of claim notarized February 5, 2016 regarding [the] incident on November 25, 201[5]," but not the incident on November 20, 2015. (Dkt. No. 57: Bradshaw Br. ¶ 8.) Bradshaw does not specify how he served the notice form or on whom, although the caption of the notice states, "SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF BRONX: CIVIL TERM." (Bradshaw Br. Ex. 1 at 1.)

Notice of claim forms must be served in accordance with Gen. Mun. Law § 50-e:

---

[16] See, e.g., 2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co., 96 F. Supp. 3d 182, 216 (S.D.N.Y. 2015) ("Under New York law, negligence sounds in tort."); Junior v. City of N.Y., Hous. Pres. & Dev. Corp., 12 Civ. 3846, 2013 WL 646464 at *3 (S.D.N.Y. Jan. 18, 2013) ("[N]egligent supervision . . . sounds in tort."); Gonzalez v. City of N.Y., 133 A.D.3d 65, 67, 17 N.Y.S.3d 12, 15 (1st Dep't 2015) (discussing "New York's long recognized tort of negligent hiring and retention"); Burks v. State, 119 A.D.3d 1302, 1303, 989 N.Y.S.2d 922 (3d Dep't 2014) (discussing "the intentional tort of false imprisonment"); Rueckert v. Cohen, 116 A.D.3d 1026, 1026, 983 N.Y.S.2d 894 (2d Dep't 2014) (discussing "the torts of assault and battery"); Reilly v. Garden City Union Free Sch. Dist., 89 A.D.3d 1075, 1076, 934 N.Y.S.2d 204, 206 (2d Dep't 2011) (discussing "the tort of intentional infliction of emotional distress").

> The notice shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, or to an attorney regularly engaged in representing such public corporation or, in a city with a population of over one million, by electronic means in a form and manner prescribed by such city.

Gen. Mun. Law § 50-e(3)(a); see also Gen. Mun. Law § 50-k(6). "The person designated by law to receive the notice of claim, on behalf of the City of New York, is the Corporation Counsel, or his designee, or the New York City Comptroller." Viruet v. City of N.Y., 181 Misc. 2d 958, 961, 695 N.Y.S.2d 663, 666 (Sup. Ct. Bronx Cty. 1999) (fns. & citations omitted), aff'd, 277 A.D.2d 33, 715 N.Y.S.2d 406 (2000), certified question answered & aff'd, 97 N.Y.2d 171, 738 N.Y.S.2d 2 (2001); see also C.P.L.R. § 311(a)(2); N.Y.C. Admin. Code § 7-201.

Bradshaw presents no evidence that he served the notice personally, electronically, or via registered or certified mail (or in any other way) on Corporation Counsel or the City Comptroller. Bradshaw's vague statement that he "filed a timely notice of claim," especially where his form is captioned for Supreme Court, Bronx County, does not permit the Court to infer that service was made in accordance with the statute, or even indicate who received the notice, if anyone. See, e.g., Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793–94 (2d Cir. 1999) ("Notice of claim requirements 'are construed strictly by New York state courts.' Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." (citations omitted)).[17]

---

[17] The Court adds that defendants deny receiving Bradshaw's notice via proper service or otherwise (Def. Br. at 17), and thus the savings provision contained in Gen. Mun. Law § 50-e(3)(c) cannot benefit Bradshaw. It states:

> If the notice is served within the period specified by this section, but in a manner not in compliance with the provisions of this subdivision, the service shall be valid if the

(continued...)

Summary judgment therefore is GRANTED on all of Bradshaw's state law tort claims against the City for failure to comply with the statutory notice of claim requirements. See, e.g., Purcell v. N.Y. Police Dep't, No. 17-CV-5673, 2017 WL 4792236 at *2 (E.D.N.Y. Oct. 23, 2017) ("[I]n order to proceed on state law claims against the City of New York, Plaintiff . . . must allege that she filed a timely notice of claim with the City."); Barnes v. City of N.Y., 13 Civ. 7283, 2015 WL 5052508 at *8 (S.D.N.Y. Aug. 26, 2015) ("To the extent that Plaintiff brings state-law tort claims against the City of New York, those claims are dismissed for failure to f[ile] a notice of claim, a statutory condition precedent to suit.").

### C. Bradshaw's Intentional Tort Claims Against The Individual Defendants Survive

When a tort claim is brought against a city employee in his or her individual capacity, the Notice requirement is triggered only where the city has a statutory indemnification obligation:

> Service of the notice of claim upon an . . . employee of a public corporation shall not be a condition precedent to the commencement of an action or special proceeding against such person. If an action or special proceeding is commenced against such

---

17/ (...continued)

> public corporation against which the claim is made demands that the claimant or any other person interested in the claim be examined in regard to it, or if the notice is actually received by a proper person within the time specified by this section, and the public corporation fail[s] to return the notice, specifying the defect in the manner of service, within thirty days after the notice is received.

Gen. Mun. Law § 50-e(3)(c). "[S]ection 50-e (3)(c), which saves claims from dismissal on account of defects in the manner of service, does not excuse a plaintiff's failure to serve a timely notice of claim on the correct public entity." Scantlebury v. N.Y.C. Health & Hosps. Corp., 4 N.Y.3d 606, 608, 797 N.Y.S.2d 394, 395 (2005). Bradshaw had an "obligation to comply with [Gen. Mun. Law § 50-e](3)(a) by serving the correct public entity before defects in the manner of service may be excused." Scantlebury v. N.Y.C. Health & Hosps. Corp., 4 N.Y.3d at 613, 797 N.Y.S.2d at 399; accord, e.g., Castro-Castillo v. City of N.Y., 78 A.D.3d 406, 910 N.Y.S.2d 68, 68 (1st Dep't 2010) ("It is well settled that service of the requisite notice of claim must be made upon the correct party, and a plaintiff may not avoid dismissal in that regard by invoking the savings provision of General Municipal Law § 50–e(3)(c)." (citation omitted)).

person, but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law.

Gen. Mun. Law § 50-e(1)(b). The indemnification provision states:

The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court . . . provided that the act or omission from which such judgment . . . arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

Gen. Mun. Law § 50-k(3).

Defendants argue that because Bradshaw's remaining claims against the individual defendants are "founded upon tort," Gen. Mun. Law § 50-e(1)(a), and the City is obligated to indemnify the individual defendants under Gen. Mun. Law § 50-e(1)(b) and § 50-k(3), the individual defendants are entitled to summary judgment on those claims. (Dkt. No. 50: Def. Br. at 17.) As evidence that indemnification is required, defendants argue that "the City has answered for the [defendant] correction officers and captains, which demonstrates that the City has determined that the employees were acting in the scope of their employment, in furtherance of their duties, consistently with agency rule and regulations, and are eligible for representation under the GML." (Id.)

Defendants blur the distinction between eligibility for representation and indemnification, conflating two separate, if overlapping, inquiries.[18] Although the individual

---

[18] See, e.g., Jean-Laurent v. Wilkerson, 461 F. App'x 18, 25-26 (2d Cir. 2012) ("[T]he interplay between [Gen. Mun. Law] § 50-e(1) and § 50-k(3) is quite complicated and there does not appear to be clear authority addressing whether [plaintiff] was obliged to file a notice of claim under the circumstances presented here. Whereas the question of whether a City
(continued...)

defendants are represented by Corporation Counsel, they are not entitled to City indemnification for any "injury or damage" that Bradshaw sustained resulting from their "intentional wrongdoing or recklessness." Gen. Mun. Law § 50-k(3). Defendants do not explain why the individual defendants are entitled to summary judgment despite the indemnification provision's clear language and Bradshaw's numerous allegations of intentional wrongdoing that, for purposes of this motion, are undisputed. (See Dkt. No. 49: Def. Rule 56.1 Stmt. at n.1); see, e.g., Jackson v. City of N.Y., 14 Civ. 5755, 2015 WL 5698535 at *18 (S.D.N.Y. Sept. 28, 2015) ("The movants failed to make any arguments on the issue of individual liability, whether the City of New York is required to indemnify Vairo and whether she was acting within the scope of her employment. Thus, dismissing the state-law claims against Vairo in her individual capacity, based on the plaintiff's failure to state a claim, is not warranted.").

Summary judgment accordingly is DENIED as to Bradshaw's intentional tort claims against the individual defendants for assault, battery, false imprisonment and intentional infliction of emotional distress (although the latter two claims are dismissed for the reasons discussed in sections VI, VII below).[19/] See, e.g., Tulino v. City of N.Y., 15 Civ. 7106, 2016 WL 2967847 at *3

---

[18/]    (...continued)
employee is entitled to representation by the Corporation Counsel under § 50-k(2) is for the Corporation Counsel to decide in the first instance, there is no such role accorded to the Corporation Counsel with respect to the question of indemnification under § 50-k(3)."); Higgins v. Town of Southampton, 613 F. Supp. 2d 327, 330 (E.D.N.Y. 2009) ("[I]t is clear that the Town has a duty to defend Schaffer. . . . Whether the Town is obligated to indemnify Schaffer is an issue of fact that will be determined at a later stage in these proceedings.").

[19/]    See, e.g., Lombardoni v. Boccaccio, 160 A.D.2d 1089, 1091, 553 N.Y.S.2d 249, 250 (3d Dep't 1990) ("[F]alse imprisonment . . . and intentional infliction of emotional distress[] are intentional torts."); Mazzaferro v. Albany Motel Enters., Inc., 127 A.D.2d 374, 376, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987) ("[A]ny right to recover for resultant injuries was on
(continued...)

(S.D.N.Y. May 19, 2016) (Plaintiff "argues that a notice of claim was not required because . . . her claims are for intentional torts based on acts committed outside the scope of employment. The Court agrees. Plaintiff's claims for assault, battery, and defamation are premised on alleged conduct that would almost certainly be 'in violation of . . . rule[s] or regulation[s]' and beyond the scope of the individual Defendants' employment." (record citation omitted)); Vesterhalt v. City of N.Y., 667 F. Supp. 2d 292, 301 (S.D.N.Y. 2009) ("Because trespass and false arrest are intentional torts under New York law, plaintiff's claims, by definition, constitute 'intentional wrongdoing' that does not qualify for indemnification. Therefore, plaintiff's trespass and false arrest claims are not procedurally barred by her failure to file a Notice of Claim." (citations omitted)); Kavazanjian v. Rice, No. 03-CV-1923, 2008 WL 5340988 at *6 (E.D.N.Y. Dec. 22, 2008) ("[T]he alleged conduct—assault and battery and intentional infliction of emotional distress—would, by definition, have constituted 'intentional wrongdoing.' The Court, therefore, holds that [plaintiff's] state-law intentional tort claims are not procedurally barred by his failure to file a Notice of Claim." (citations omitted)).

### D. Bradshaw's Negligence Based State Law Tort Claims Are Dismissed

In contrast to intentional torts, the individual defendants are entitled to indemnification for ordinary negligence that occurred within the scope of their employment. See, e.g., Allen v. Antal, 665 F. App'x 9, 14 (2d Cir. 2016) ("[T]he district court correctly dismissed [plaintiff's] negligence claim against County Clerk Kendall on the ground that [plaintiff] failed to

---

19/ (...continued)
the basis of the intentional tort of assault and battery, rather than in negligence. New York has adopted the prevailing modern view that, once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.").

comply with New York's notice of claim requirements.").[20/] Moreover, as a substantive matter, the Court agrees with defendants that Bradshaw's allegations focus on defendants' alleged "deliberate indifference" and other intentional, not negligent, conduct.[21/] Even if some of Bradshaw's allegations fell outside the scope of "intentional wrongdoing or recklessness on the part of the [defendant] employee[s]," Gen. Mun. Law § 50-k(3), Bradshaw has not shown, or even argued, why he would be exempt from the Notice requirement in such a case.

* * *

Summary judgment therefore is GRANTED as to all of Bradshaw's state law claims against the City and his negligence claims against the individual defendants.

---

[20/] Only the negligence claim is at issue here because Bradshaw pled his negligent hiring, training and supervision claim against the City, not the individual defendants. (Dkt. No. 2: Compl. ¶¶ 81-82.)

[21/] (See Compl. ¶ 17 ("Officer Hernandez . . . had been deliberately indifferent to Plaintiff's health and safety."); ¶ 22 ("Captain Bailey was deliberately indifferent to Plaintiff['s] medical need by her failure to obtain medical assistance."); ¶ 24 ("Captain Brown . . . was deliberately indifferent" by threatening Bradshaw and denying his request for medical assistance.); ¶ 31 ("Officer Alphonse . . . assaulted" Bradshaw.); Dkt. No. 50: Def. Br. at 21 ("[I]t is unclear upon what factual allegations plaintiff bases his purported negligence claim. Even if he were clear, the defendants' actions as he alleges them were intentional.")); Newton v. City of N.Y., 779 F.3d 140, 157 n.17 (2d Cir. 2015) ("'[T]he Courts of Appeals have routinely equated deliberate indifference with recklessness.'"), cert. denied, 136 S. Ct. 795 (2016); Bogart v. City of N.Y., 13 Civ. 1017, 2016 WL 4939075 at *13 (S.D.N.Y. Sept. 6, 2016) ("'Various federal courts within this circuit have held . . . that under New York State law, when a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.'" (citing cases)); Lozada v. Weilminster, 92 F. Supp. 3d 76, 107 (E.D.N.Y. 2015) ("While Plaintiff is generally permitted to plead different causes of action in the alternative, other District Courts in this Circuit have held that when a plaintiff's factual allegations are 'only consistent with a theory of intentional, or perhaps reckless, conduct,' negligence claims must be dismissed.").

## VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRADSHAW'S WRONGFUL CONFINEMENT CLAIM

"'Some New York courts have described the tort of wrongful confinement as a 'species of false imprisonment.' To recover for wrongful confinement, a prisoner must demonstrate that 'he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.'" McGowan v. United States, 825 F.3d 118, 126 (2d Cir. 2016) (citation omitted); see also, e.g., Willey v. Kirkpatrick, 801 F.3d 51, 70-71 (2d Cir. 2015).[22] "Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate purpose or for the purpose of punishment 'generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001); accord, e.g., Patterson v. Ponte, 16 Civ. 3156, 2017 WL 1194489 at *3 (S.D.N.Y. Mar. 30, 2017), R. & R. adopted, 2017 WL 1405753 (S.D.N.Y. Apr. 17, 2017), appeal dismissed (Aug. 14, 2017).

Bradshaw claims that Captain Brown forced him to remain in the intake unit for seven days "without due process." (Dkt. No. 2: Compl. ¶ 78; see pages 3-4 above.) Bradshaw's claim is different from the vast majority of wrongful confinement claims brought in this Circuit where an inmate is transferred to restricted housing because of an alleged disciplinary infraction.

---

[22]    The Court notes that while defendants argue that Bradshaw must show that the conditions of his segregation imposed an "'atypical and significant hardship'" (Dkt. No. 50: Def. Br. at 18), that standard is inapplicable to pretrial detainees. See, e.g., Wilson v. Calderon, 14 Civ. 6209, 2017 WL 2881153 at *12 n.11 (S.D.N.Y. July 6, 2017) ("[A] pretrial detainee 'need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process.'"), R. & R. adopted, 2017 WL 3209148 (S.D.N.Y. July 27, 2017); Parson v. York, No. 16-CV-167, 2017 WL 1076536 at *4 (N.D.N.Y. Feb. 28, 2017) (same), R. & R. adopted, 2017 WL 1066677 (N.D.N.Y. Mar. 21, 2017).

In those cases, "[p]rocedural due process requires that a pretrial detainee be given 'written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence' before being subjected to punitive as opposed to administrative measures." Almighty Supreme Born Allah v. Milling, No. 16-1443-PR, --- F.3d ----, 2017 WL 5615989 at *5 n.3 (2d Cir. Nov. 22, 2017).  Moreover, "New York adopted regulations . . . which provide more protection to inmates than the constitution requires." Bethune v. State, 50 Misc. 3d 1216, 1216, 36 N.Y.S.3d 46, 46 (N.Y. Ct. Cl. 2015) (table); see also, e.g., Laureano v. Kuhlmann, 75 N.Y.2d 141, 146, 551 N.Y.S.2d 184, 187 (1990).

Here, however, Bradshaw requested to be moved from his housing unit out of fear for his safety, and he does not claim that he was denied any particular state or federal procedural protections either before or during his stay in the intake unit.  See, e.g., Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) ("[P]laintiff's conclusory allegation [of due process violations] without any indication of what aspect of required procedure was not provided, renders his due process claim insufficient."); Banks v. Pinker, 10 Civ. 4139, 2012 WL 1066799 at *3 (S.D.N.Y. Mar. 22, 2012). Thus, while Bradshaw may be able to show that his confinement was "punitive," he has not shown that his placement there was for "'no legitimate reason and without the rudimentary protections of due process.'"  McGowan v. United States, 825 F.3d at 126; see also, e.g., Callender v. State, 38 Misc. 3d 651, 659, 956 N.Y.S.2d 792, 799 (N.Y. Ct. Cl. 2012) ("It is, in any event, claimant's burden to demonstrate how defendant ran afoul of governing regulations.").

Defendants' summary judgment motion is GRANTED as to Bradshaw's wrongful confinement claim.

## VII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON BRADSHAW'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS

In New York, there are "four elements of a cause of action for intentional infliction of emotional distress ["IIED"]: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" Chanko v. Am. Broad. Cos. Inc., 27 N.Y.3d 46, 56, 29 N.Y.S.3d 879, 886 (2016). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotations omitted). "IIED, although providing relief for plaintiffs upon occasion . . . , remains a 'highly disfavored [tort] under New York law.' It 'is to be invoked only as a last resort.'" Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citation omitted); see also, e.g., Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993) ("[T]he 'requirements of the rule are rigorous, and difficult to satisfy.' Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous." (citations omitted)).

Defendants do not move on the merits of Bradshaw's IIED claims. (See Dkt. No. 50: Def. Br. at 18-19.) Rather, defendants argue that an IIED claim cannot survive where it falls within the ambit of "'traditional tort liability.'" (Def. Br. at 19.) Defendants argue that because Bradshaw "sets forth various alternate theories of liability, excessive force, failure to intervene, assault and battery, false imprisonment, and negligent hiring and training," "[t]he intentional infliction of emotional distress claim is unnecessary." (Id.) Bradshaw's assault and battery claims against Officer Alphonse survive summary judgment, as does his claim against Officer Hernandez

for failure to intervene during the November 20, 2015 assault.  "[S]tate courts and federal district courts in this Circuit 'have consistently held that the tort of intentional infliction of emotional distress may not be used as a substitute for an available traditional tort theory." Caravalho v. City of N.Y., 13 Civ. 4174, 2016 WL 1274575 at *23 (S.D.N.Y. Mar. 31, 2016); see also, e.g., DiRuzza v. Lanza, 685 F. App'x 34, 36 (2d Cir. 2017) (IIED "may be invoked 'only as a last resort,' that is, only when other theories of tort recovery are unavailable.").  The Court accordingly dismisses Bradshaw's IIED claims against Officers Alphonse and Hernandez as duplicative of his remaining claims.  See, e.g., Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015) ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability.'  All four Appellate Division courts have answered the question and held that it cannot." (citation omitted, citing cases)); Warr v. Liberatore, No. 13-CV-06508, 2017 WL 3872491 at *11 (W.D.N.Y. Sept. 5, 2017) (Plaintiff "argues that his intentional infliction of emotional distress claim is proper because of the officers' excessive use of force and the injuries resulting therefrom.  [Plaintiff's] claims resulting from the incident are wholly encompassed in the other intentional torts alleged by [Plaintiff]—i.e., false arrest, excessive use of force, assault, and battery."); Jackson v. City of N.Y., 29 F. Supp. 3d 161, 183 (E.D.N.Y. 2014) ("Plaintiff's IIED claim must be dismissed because it overlaps with his claims of assault, battery, and false arrest."); Universal Calvary Church v. City of N.Y., 96 Civ.4606, 2000 WL 1538019 at *12 (S.D.N.Y. Oct. 17, 2000) ("Under the circumstances here, [plaintiff's] claim for intentional infliction of emotional distress is subsumed under his excessive force claim.").

Defendants' summary judgment motion as to Bradshaw's intentional infliction of emotional distress claims is GRANTED.

## CONCLUSION AND SCHEDULING[23/]

For the reasons set forth above, defendants' motion for partial summary judgment (Dkt. No. 47) is <u>GRANTED</u>, except <u>DENIED</u> as to the state law claim of assault and battery against Officer Alphonse. Bradshaw's claims against the City of New York, and his claims against the individual defendants for denial of medical care, violation of the Equal Protection Clause, negligence, wrongful confinement and intentional infliction of emotional distress are dismissed.

Bradshaw's following claims survive for trial:

(1)     failure to intervene under 42 U.S.C. § 1983 against Officer Hernandez;

(2)     excessive force under 42 U.S.C. § 1983 against Officer Alphonse; and

(3)     assault and battery under New York law against Officer Alphonse.

The Joint Pretrial Order is due by December 29, 2017. The Court will hold the final pretrial conference on January 4, 2018 at 11A.M. in courtroom 20D, 500 Pearl Street. Defense counsel is to make the necessary arrangements with the prison for Mr. Bradshaw to appear telephonically by calling 212-805-0036 at the time of the conference. Counsel shall come to the conference with available dates for trial in January, likely the week of January 15 or January 29, 2018.

SO ORDERED.

Dated:     New York, New York
           December 7, 2017

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:     Counsel (ECF), Mr. Bradshaw (mail)

---

[23/]     If Bradshaw requires copies of any of the cases reported only in Westlaw, he should request copies from defense counsel. <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.